UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| DANA TATE, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 5: 18-544-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| FRANCISCO QUINTANA, Warden, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Petitioner Dana Tate is a federal inmate, currently confined at the Federal Medical Center ("FMC")-Lexington in Lexington, Kentucky. Tate has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. [Record No. 1] The matter is pending for initial screening. 28 U.S.C. § 2243. *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011).[1]

**I.**

Tate alleges that while he was previously incarcerated at the Federal Correctional Institution ("FCI")-Memphis he and inmate James Morris had a verbal altercation involving a chair. [Record No. 1 at p.1] Tate states that, at the end of the

---

[1] A petition will be denied "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)).

"shouting match," both inmates apologized and resumed their evening. [*Id.*] However, he contends that notwithstanding the apology, Morris later came to Tate's bed and threw hot chocolate on him. [*Id.*]

Prison staff issued Tate a Code 201 Incident Report for Fighting With Another Person as a result of the altercation. [Record No. 1-1 at p. 1] According to the Incident Report prepared by staff member J. Phillips, the incident involving the chair escalated to a physical altercation during which Morris struck Tate and Tate threw coffee on Morris, causing burns to Morris' chest. [*Id.*] In retaliation, Morris later threw hot chocolate on Tate as Tate lay in his bunk. [*Id.*] Officers conducted upper body searches, revealing injuries to Morris' chest and injuries to Tate's chest and elbow after Tate reported the incident. [*Id.*] According to the report, Tate admitted to being involved in an altercation with Morris and stated that he had thrown coffee on Morris. [*Id.*] Morris denied the altercation and alleged that his coffee cup fell from the ice machine, but this account was contradicted by the location of the spilled coffee. [*Id.*] The report further states that medical assessments conducted on both Tate and Morris noted bruising and erythema across Tate's upper chest and a blister on Tate's left elbow, as well as injuries to Morris' upper neck. [*Id.*]

A Disciplinary Hearing Officer ("DHO") held a hearing on the charge against Tate on January 27, 2017. [Record No. 1-1 at p. 2] During the hearing, Tate acknowledged that he and Morris had a verbal altercation over a chair but denied

throwing coffee on Morris. [*Id.*] Tate further stated that, although Morris apologized after the verbal altercation, Morris later threw hot chocolate on Tate. [*Id.*] According to the DHO report, before the hearing, Tate was provided with written notice of the charge via a copy of the Incident Report prepared by Phillips and was advised of his rights before the DHO by Counselor Carter. [*Id.*] The report indicates that Tate waived the right to a staff representative at the hearing and did not request witnesses. [*Id.*]

The DHO considered the Incident Report and investigation, as well as photos of Morris and Tate, medical assessments for Morris and Tate, and supporting memos from Officer A. Danner, Officer J. Rush, Officer J. Jones and Lieutenant J. Phillips. [*Id.* at p. 3-4] The DHO further considered Tate's statement that Morris threw hot chocolate on Tate, but denying that he threw coffee on Morris, as well as Morris' statement denying throwing anything on Tate, but stating that Tate threw coffee on him. [*Id.* at p. 4]

The DHO concluded that it was more than reasonable that Tate and Morris were not being honest about the incident to avoid disciplinary sanctions. [*Id.*] The DHO further stated that he had no reason to disbelieve the findings of Lt. Phillips' investigation of the incident, which confirmed the argument that developed into a fight. [*Id.*] The DHO also noted that the medical assessments indicated that both Tate and Morris were exposed to hot liquids and that staff memorandum further

supported the charge against Tate. [*Id.*] The DHO found that, based on facts related to the evidence presented and Tate's admission to the incident, Tate committed the Code 201 offense of Fighting with Another Person. [*Id.*] The DHO imposed various sanctions, including the loss of 27 days of good time credits as required by 28 C.F.R. § 541.4(b)(2). [*Id.*]

Tate appealed the DHO's decision administratively within the Bureau of Prisons, but his efforts were unsuccessful. Tate then filed his § 2241 petition with this Court, requesting that the Court order Respondent to rescind Tate's loss of good time credit. [Record No. 1]

## II.

The Due Process Clause requires prison officials to observe certain protections for the prisoner when a prison disciplinary board takes action that results in the loss of good time credits in which the prisoner has a vested liberty interest. The prisoner is entitled to advanced notice of the charges, an opportunity to present evidence in his or her defense, whether through live testimony or documents, and a written decision explaining the grounds used to determine guilt or innocence of the offense. *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974). Further, the board's findings used as a basis to revoke good time credits must be supported by some evidence in the record. *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). When determining whether a decision is supported by

"some evidence," the Court does not conduct an independent review of the evidence or assess the credibility of witnesses. Instead, it asks only "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56; *Higgs v. Bland*, 888 F. 2d 443, 448-49 (6th Cir. 1989).

Tate argues that the DHO's decision was not based on sufficient evidence. However, while framed as a challenge to the sufficiency of the evidence, Tate's petition actually challenges the veracity of some of the evidence relied upon by the DHO in reaching his conclusions. Specifically, Tate argues that the Incident Report prepared by Lt. Phillips is "full of errors" and contains "false allegations." [Record No. 1 at p. 2] Although Tate concedes that, pursuant to BOP Program Statement 541.5(a), an incident report may be prepared by a staff member who witnesses or reasonably believes that a prohibited act occurred, he repeatedly challenges the Incident Report based solely on the grounds that Lt. Phillips did not actually witness the incident. According to Tate, because there were no witnesses to the incident and neither he nor Morris provided a statement, the conclusions of the report are necessarily unsupported by appropriate evidence. [*Id.* at p. 3] Tate further denies that he admitted to being in an altercation with Morris and throwing coffee on him, as indicated in the report. [*Id.* at p. 4]

However, "a district court's role in reviewing a disciplinary conviction is extremely limited." *Stell v. U.S. Bureau of Prisons*, No. 7:08-CV-150-KKC, 2008 WL 4758664, at *2 (E.D. Ky. Oct. 28, 2008). In ascertaining whether there is some evidence to support the decision of the DHO, the Court does not independently assess the credibility of witnesses or weigh the evidence, but only examines whether there is "some evidence" in the record to support the DHO's decision, a very lenient standard. *Hill*, 472 U.S. at 455-56. Indeed, "the Court has no authority under the guise of due process to review the resolution of factual disputes in a disciplinary decision; a district court merely ensures that the disciplinary decision is not arbitrary and does have evidentiary support." *Stell*, 2008 WL 4758664 at *2.

Here, in addition to the Incident Report prepared by Phillips, the DHO's decision was also based on a review of photos of Morris and Tate, the medical assessments for Morris and Tate, and supporting memos from Officers Danner, Rush, and Jones. [Record No. 1-1 at p. 3-4]. This evidence constitutes more than "some evidence" to support the DHO's finding that Tate was guilty of the charged offense of fighting with another person. While Tate may argue that the Incident Report prepared by Phillips and relied upon by the DHO lacked credibility, the Court is not required to independently assess credibility and/or weigh evidence. *See Amerson v. Samuels*, Civil Action No. 04-577-KKC, 2005 WL 1223427, at *5 (E.D.

Ky. May 20, 2005). As there was some evidence supporting the DHO's finding, Tate's due process rights were not violated.

Tate also argues that he was denied due process because he was not made aware prior to the hearing that Officers Danner, Rush and Jones were witnesses or that they had submitted memos. Thus, he claims that he was denied the opportunity to call the officers as witnesses. [Record No. 1 at p. 4] However, with respect to minimal due process protections that are relevant here, *Wolff* requires only that Tate be given 24-hour written notice of the charges against him (not of the witnesses to be called), *Wolff*, 418 U.S. at 564, and a right "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id*. at 566. Neither protection encompasses a right to advance notice of the evidence to be introduced against Tate at the hearing. Indeed, in *Wolff*, the Supreme Court considered and rejected the constitutional right to confront and cross-examine witnesses in this context, noting that "[i]f confrontation and cross-examination of those furnishing evidence against the inmate were to be allowed as a matter of course, as in criminal trials, there would be considerable potential for havoc inside the prison walls." *Id*. at 567.

Tate does not claim that he was not made aware of the charges against him prior to the hearing. Instead, he claims that his due process rights were violated

because he was not given advance notice of the specific evidence that would be used against him and, if he had known that statements from certain officers would be used, he would have called those officers as witnesses. But Tate's claim is without merit because due process does not require that the inmate be given the opportunity to confront and cross-examine witnesses.

Tate next argues that he was denied adequate representation at the DHO hearing. According to Tate, although the DHO report indicates that Tate waived the right to a staff representative [Record No. 1-1 at p. 2], Tate claims that he had requested that his case manager serve as his staff representative, as his case manager was familiar with his character and lack of education, specifically Tate's inability to read or write well. [Record No. 1 at p. 6] He states that, at the beginning of the hearing, he was told that his case manager was not available, but that another officer was available to serve as staff representative. [*Id*. at p. 6] According to Tate, the DHO told him that he could either accept that officer as his staff representative or waive his right. [*Id* at p. 6] Tate alleges that the DHO would not agree to postpone the hearing until Tate's case manager was available. [*Id*. at p. 8] Thus, according to Tate, the notation in the DHO report that Tate waived his right to staff representation is misleading, because he "did NOT waive his right to Staff representation…, he waived the DHO's attempt to force him to be represented by an Officer in the hallway at the time." [*Id*. at p. 9]

The due process protections required by *Wolff* do not include representation by either an attorney or any other specific person during a prison disciplinary proceeding. *See Wolff*, 418 U.S. at 570 ("At this stage of the development of these procedures we are not prepared to hold that inmates have a right to either retained or appointed counsel in disciplinary proceedings."). *See also Watters v. Ray*, 175 F. App'x 212, 214 (10th Cir. 2006) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976)). While *Wolff* recognizes that, where an inmate is illiterate, he or she "should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff," *Wolff*, 418 U.S. at 570, it does not follow that an inmate's due process rights are violated if that inmate is denied the assistance of a specific staff member of his or her choosing.

Moreover, although 28 C.F.R. § 541.8(d)(1) provides that a prisoner may request the staff representative of his or her choice at a DHO hearing, that regulation further provides that, if the prisoner's request cannot be fulfilled and the prisoner still wants a staff representative, one will be appointed by the warden. 28 C.F.R. § 541.8(d)(1) See *also* BOP Program Statement 5270.09 Ch. 5 (2011). Based on Tate's allegations, this regulation was not violated here, as the DHO offered to appoint another staff member as Tate's representative. [Record No. 1 at p. 6, 9] Even so, "[p]rison regulations are primarily designed to guide correctional officials

in the administration of a prison. [They are] not designed to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, "a failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984)). Cf. *Farrakhan-Muhammad v. Fox*, No. 16-CV-2272-PAB, 2018 WL 637460, at *6 (D. Colo. Jan. 31, 2018) ("... even if prison officials deviated from BOP regulations in the administration of Applicant's mental health evaluation, the Court cannot conclude that he was denied due process based solely on the failure to follow particular federal regulations and directives.").

Finally, although Tate claims that he was denied a fair and impartial decision-maker, his claim is based solely on the fact that the DHO accepted the allegations contained in the Incident Report and found him guilty of the charged offense. [Record No. 1-1 at p. 9] It is true that "[a]n impartial decisionmaker is a fundamental requirement of due process that is fully applicable in the prison context." *Gwinn v. Awmiller*, 354 F.3d 1211, 1219 (10th Cir. 2004). But a mere allegation of bias does not undermine the presumption of integrity afforded a prison disciplinary tribunal; instead, the petitioner must provide "some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." *Withrow v. Larkin*, 421 U.S. 35, 46-47 (1975); *Tonkovich v. Kan. Bd.*

*of Regents*, 159 F.3d 504, 518 (10th Cir. 1998). Tate fails to provide any such reason to conclude that the DHO was actually biased here.

### III.

Tate's due process rights were fully observed and his habeas petition fails to establish grounds for relief. Accordingly, it is hereby

**ORDERED** as follows:

1. Tate's petition for a writ of habeas corpus [Record No. 1] is **DENIED**.

2. This matter is **STRICKEN** from the Court's docket.

Dated: October 9, 2018.

Signed By:
*Danny C. Reeves*
United States District Judge